The opinion of the court (Slidell, J. declining to sit in the case, being interested) was pronounced by
Eustis, C. J.
On the 4th November, 1836, Martin Gordon, Jr. and John McHenry, bought from H. C. Cammack and Thomas Dixon, in the city of New Orleans, throe lots of ground adjoining each other in the rear of suburb Lafayette, having a front of about one thousand feet, and extending about four thousand feet in the swamp, where they terminated in a point. The price was twenty-five thousand five hundred dollars, payable in one, two and three years. Each of the purchasers gave his six notes endorsed by the other for $2125.
On the 8th of July, 1838, Gordon conveys to the plaintiff one undivided fourth of this property. The price we infer to have been the sum of $6375, being the amount of three of the notes given by Gordon for the purchase, two of which it is acknowledged in the act the plaintiff had paid, and one of which he assumed to pay. The conveyance was made in consequence, it would appear, of a previous agreement between the parties ; and we do not understand it to be contested that the price was fully paid by the plaintiff for the one-fourth interest in the land thus conveyed to him. The act of conveyance was only recorded in the office of the recorder of mortgages in the parish of Jefferson, where the land was situated, on the 12th December, 1840, without being registered in the office of the parish judge or of a notary public in that parish.
On the 20th February, 1840, Gordon presented his petition praying for the benefit of the laws made in favor of debtors in actual custody. In his schedule of effects he placed one undivided fourth interest in the property purchased by McHenry and himself from Dixon and Cammack, and afterwards assigned to the syndic all his right, title, and interest in the property set forth in the schedule.
The syndic in selling the property of the insolvent, instead of describing the interest in those lots as one undivided fourth, advertised and sold all the right, title, and interest of Gordon in the property purchased of Dixon and Cammack. Under this denomination the interest of Gordon was adjudicated to the defendant, who ceding the purchase to another, the conveyance was made to the *275 latter. But as the defendant was under the necessity of taking back the land, for the purpose of this suit, he may be considered as holding under the adjudication and conveyance of the syndic. The conveyance bears date the 16th October, 1840, and was recorded in the parish of Jefferson on the 17th November, 1841. It purports to convey to the purchaser all the right, title and interest of Gordon, and of the syndics and creditors, by virtue of the cession made by the insolvent iu and to the lots before described.
The present suit, though in the form of an action of jactitation, has resolved itself into a petitory action as to the ownership of the undivided fourth interest sold by Gordon to the plaintiff before his failure — the conveyance of which was not recorded in the parish where the property was situated. The plaintiff claim'ing under this title, and the defendant under the adjudication made by the syndic of this interest as the property of the insolvent.
The case was submitted to a jury, who found a verdict in favor of the plaintiff ; the district judge refused to disturb the verdict, though of opinion that the case was with the defendant on the merits, preferring to refer it to this court for final adjudication. Judgment was rendered accordingly in favor of the plaintiff, and the defendant has appealed.
The case has been argued very elaborately, but from the commencement of the discussion, it appeared to us that one of the grounds taken by the counsel for the plaintiff, controlled completely its result.
It is contended by the counsel for the defendant, that by the cession of Gordon, all his property not alienated according to the forms of law became vested in the syndic, and that all the interest acquired by Gordon by his original purchase passed by the syndic’s sale to the purchaser at that sale ; and several decisions of the Supreme Court are referred to in support of that position. We do not find these decisions to be to the effect contended; but only as laying down the rule that the property and rights of insolvents pass by the cession to the creditors, whether they be stated in the schedule or not. The statutes relating to insolvency require them to be particularly set forth to their full extent in the schedule filed by the debtor ; but he is only obliged to put upon it the property which .belongs to him, together with his rights, present, future and contingent. He cannot put upon his schedule, nor can he cede, nor his creditors acquire through him, that which does not belong to him. The schedule is made - under oath, and is appended to the application of the insolvent for the benefit of the insolvent laws. In the present case, the insolvent was in actual custody, and, under the statute, before being discharged was bound to re-affirm, under oath, the correctness of the return of his propeily and rights set forth in his schedule. We think the insolvent was not permitted to place in his schedule, as his property, the fourth of the lots which he had sold to the plaintiff. That interest which he had sold ceased to belong to him, whether the plaintiff recorded his title in the parish where the lots were situated or not. We apprehend that a matter like this is of frequent occurrence in this city, where so large a portion of property holders habitually resort, and estates out of the parish of Orleans are bought and sold. It is the business of the purchaser to record his act of sale, if he chooses, in the parish where the land is situated; but if this is not done, we do not see how the failure to record the deed gives the seller any right in the property sold. True, he may swindle the purchaser by selling it again, if the act be not recorded, and the law will protect the second purchaser, if he be in good faith and without notice; and time, the judgment creditors of the seller may acquire a mortgage on it by recording their judgments. But we do not understand that the privilege *276 thus given by the registry laws, from motives of public policy, to the second purchaser or the creditor, recognises any right in the seller, after he shall have completed the sale and thereby parted with his property.
We, therefore, conclude that Gordon placed upon his schedule all the interest in those lots which belonged to him, and which he had a right to convey to his creditors, .to wit, one undivided fourth thereof, and that the creditors by the cession, whether it was on the schedule or not, could acquire no more from him.
In the act of sale from the syndic, no other right, title, or interest in the lots purports to be transferred, except those derived from the cession; and it follows, as the defendant acquired none others, the interest which he holds by his purchase is the one-fourth only which Gordon placed upon his schedule as his property, and that he, the defendant, has no right in law to question the title of the plaintiff in the other fourth, which he purchased from the insolvent before his failure.
Having formed this opinion on the title of the defendant, we have not thought it necessary to examine the other questions raised in the court below, and presented in this court. Whatever rights the creditors of Gordon may have against this fourth of the lots, in consequence of the act not having been recorded in time ; whatever rights the defendant may have by virtue of any subrogation which the distribution of the proceeds of the sale paid by him among the mortgage creditors, may have vested in him in relation to this share, they are, os it were, out of the insolvent proceedings, resting alone with the parties in interest, exclusive of the administration of the syndicate and consequently not before us.
Judgment affirmed, with costs.